# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

### No. 16-2692

### THEODORE HAYES and AQEELA FOGLE
**Appellants,**

**v.**

### PHILIP HARVEY
**Appellee**

An Appeal from the Order and Memorandum Opinion
of the United States District Court
for the Eastern District of Pennsylvania
on May 10, 2016 at Civil Action No. 15-2617

### BRIEF OF APPELLEE

Susanna Randazzo, Esquire
**KOLBER & RANDAZZO, PC**
One South Broad Street, Suite 1610
Philadelphia, PA 19107
Tel: (215) 567-1333
Fax: (215) 567-2099
srandazzo@krpc-law.com

**Attorney for Appellee**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee

states that it has no parent corporation and that no publicly traded corporation

that owns 10% or more of it's stock.

BY:   <u>/s/Susanna Randazzo</u>
           Susanna Randazzo, Esquire
           Attorney for Appellee
           I.D. No. 79116
           1 South Broad Street
           Suite 1610
           Philadelphia, PA 19107
           P - (215) 567-1333
           F - (215) 567-2099

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................ii - iii

TABLE CONSTITUTIONS, STATUTES, RULES AND
REGULATIONS.......................................................................................iv - vii

STATEMENT OF JURISDICTION....................................................................1

STANDARD OF REVIEW...............................................................................1

COUNTER STATEMENT OF ISSUES PRESENTED....................................1

STATEMENT OF RELATED CASES...............................................................1

STATEMENT OF THE CASE..........................................................................2

STATEMENT OF THE FACTS ................................ ...................................2

    I. Background .......................................................................................2

SUMMARY OF ARGUMENT.........................................................................5

ARGUMENT....................................................................................................5

I.     THE DISTRICT COURT CORRECTLY HELD THAT
     APPELLANTS DO NOT HAVE THE RIGHT TO REMAIN
     IN THE PREMISES AS THE LEGISLATIVE HISTORY OF
     42. U.S.C. §1437 f(t) CONCERNS ONLY HUD'S & OPT
     OUT LANDLORD'S OBLIGATIONS TO THE TENANT,
     NOT APPELLANTS....................................................................5

     A.    Statutory Background..........................................................5

     B.    Right to Remain Does Not Extend Into Perpetuity...........10

     C.    Appellant's Application of the Right to Remain is a

Violation of Fifth and Tenth Amendment to the Constitution..........................................................................18

1.  Violation of Fifth Amendment......................................18

2.  Violation of Tenth Amendment....................................19

CONCLUSION...............................................................................20

CERTIFICATIONS OF COMPLIANCE WITH RULES

CERTIFICATE OF BAR MEMBERSHIP

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Cases

*Pelullo v. Nat'l Union Fire Ins. Co. of Pittsburgh,*
    31 Fed. Appx. 864 (3d. Cir. 2005)..............................................................1

*Scooper Dooper,Inc. v. Kraftco Corp,.* 460 F.2d 1204 (3d. Cir. 1972)............1

*Nat'l Land & Investment Co. v. Specter*, 428 F.2d 91, 95 (3d. Cir. 1970)........1

*Park Village Apts. et al. v. Mortimer Howard Trust,*
    636 F.3d 1150 (9th Cir. 2011) ....................................................................13

*Feemster v. BSA Ltd*, 548 F. 3d 1063 (D.C. Cir. 2008),
    *aff'g in relevant part*, 471 F. Supp, 2d 87 (D.D.C. 2007)..........................13

*Barrientos v. 1801-1825 Morton, LLC*, No.: 06-6437,2007 WL 7213974
    (C.D. Cal. Sept. 10, 2007, *aff'd on other grounds*, 583 F.3d 1197
    (9th Cir. 2009)......................................................................................13, 14

Barrientos v. 1801-1825 Morton, Memorandum Opinion 06-CV-6437............14

*Estevez v. Cosmopolitan Assoc., LLC*, No.: 05-4318, 2005
    WL 3164146 (E.D.N.Y Nov. 28, 2005)................................................13, 14

*Jeanty v. Shore Terrace Realty Ass 'n*, No. 03-8669,
    2004 WL 1794496 (S.D.N.Y. Aug. 10, 2004)............................................13

*In People to End Homelessness, Inc. v. Develco Singles
    Apartment Associates*, 339 F. 3d 1 (1st 2007, *aff'd on other grounds*,
    583 F.3d 1197 (9th Cir. 2009) ....................................................................15

*Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 127 (1978) ............19

*N.Y. v. U.S.*, 505 U.S. 144, 157 (1992).................................................................19

*U.S. v. Fox*, 94 U.S. 315, 320 (1877)...................................................................20

## Statutes

28 U.S.C. §1291...........................................................................................1

42 U.S.C. §1437 f (o)...........................................................................4, 10, 17

42 U.S.C. §1437 f(t)..........................................................4, 8, 10, 15,16, 17, 18

42 U.S.C. §1437 f(o)(1)(B) ...................................................................................6

42 U.S.C. §1437 f (o)(2)(A)-(B)..........................................................................6

42 U.S.C. §1437 f (o)(7)(C)...........................................................................7, 14, 17

42 U.S.C. §1437 f(c)(8)(A)...................................................................................8

42 U.S.C. §1437 f(t)(1) and (2)............................................................................13

Housing & Urban Development Act of 1968, 82 Stat. 476, 498-503 (1968),Pub. L. No. 90-448, §§ 201(a), 236 (a)-(g).................................................................7

113 Stat. 1047, 1113 (1999), Pub. L. No.: 106-74, §531(d)(1)

114 Stat. 569 (2000), Publ. L. No. 106-246 §2801.....................................9, 16

110 Stat. 1321, 1321-281 (1996), Pub. L. No. 104-134, §203 (c)(2)..............14

112 Stat. 2461, 2561, 2596-604, 2607-09 (1998), Pub. L. No. 105-276, §§545, 549(a)........................................................14

Landlord Tenant Act of 1951.............................................................................12

## **Constitution**

U.S. Constitution Amend.  V.................................................................................18

U.S. Constitution Amend.  X.................................................................................19

## **Regulations**

24 C.F.R. §982...........................................................................................................4

24 C.F.R §982.1(b)(1)................................................................................................6

24 C.F.R §221.524 (a)(ii)(197)....................................................................................7

## STATEMENT OF JURISDICTION

This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

The standard for review over a district court's decision to grant a motion for summary judgement is plenary. *Pelullo v. Nat'l Union Fire Ins. Co. of Pitts.*, 31 Fed. Appx. 864 (3d. Cir. 2005). This appeal is also denial of Appellants' demand for injunctive relief. Accordingly, the burden on the appellant to secure a reversal of the lower court's denial of preliminary injunction is high, *Scooper Dooper, Inc. v. Kraftco Corp.*, 460 F.2d 1204 (3d Cir.1972), and the Court's scope of review is limited to ". . . determining whether there has been an abuse of discretion, an error of law or a clear mistake in the consideration of the proof. *Nat'l Land & Investment Co. v. Specter*, 428 F.2d 91, 95 (3d Cir.1970).

## COUNTER STATEMENT OF ISSUES PRESENTED

1.    Whether the District Court properly granted Appellee's Motion for Summary Judgment and denied Appellants' Motion for Summary Judgment when plaintiff failed to meet the four prong requirements of a preliminary injunction and lacked standing to sue.

## STATEMENT OF RELATED CASES

This case has not previously been before this Court.

## STATEMENT OF THE CASE

Appellants, Theodore Hayes and Aqeela Fogle ("Plaintiffs" and/or "Appellants") brought a claim against Appellee-Landlord, Philip Harvey, seeking to enjoin their eviction on the grounds that they have a perpetual right to remain in the premises owned outright by Appellee.

On May 10, 2010, the district court granted the defendant's motions for summary judgement, denied plaintiff's motion for summary judgment and dismissed Plaintiffs' Complaint seeking injunctive relief. The district court correctly held that Plaintiffs claim for injunctive relief was without legal basis and that Plaintiffs do not have a legal right to remain in the premises. The district court also correctly held that Defendant could move for eviction of the Plaintiffs. Mr. Hayes and Ms. Fogle now appeal the district court's ruling.

## STATEMENT OF THE FACTS

### I.    Background

Appellee Philip E. Harvey is the rightful owner of the property located at 538 Pine Street, Apt. B, Philadelphia, PA ("the premises") (J.A. 639). He purchased the duplex located at 536-540 Pine Street on August 31, 2010 from Pine Street Assoc. (J.A. 496). The property consists of three duplex row homes each with a one bedroom unit on the first floor and a four bedroom unit in apartments

2

538 B and 540 B and a three bedroom unit in apartment 536 B.  (J.A. 556).

Mr. Harvey purchased the duplex at market rate for $1,215,000 without the use of any federal mortgage. (J.A. 639).  The premises was purchased in fee simple, free and clear of any impediments, encumbrances, liens and/or restrictions. Moreover, the deed has no restrictions on the residential rental use of the premises. (J.A. 639).  The Title Insurance search (J.A. 643) also provides that the property is not encumbered and purchased without a mortgage.  It is undisputed that at no time did Appellee enter into a *projected based* Section 8 contract with HUD.

Although it appears that Appellants are relying on newspaper articles[1] for the history of this property, Appellee has no knowledge of either this remote history and/or the prior tenancy of the Hayes Family[2].  As a matter of fact, as will be discussed *infra*, at the time of purchase of the property, Mr.  Harvey had no knowledge of the enhanced voucher.  (J.A. 515, 521).

Defendant Harvey and Florence Hayes, deceased mother of Theodore R.

---

[1] Random reports provided in newspaper articles regarding events that occurred more than four decades ago are not authoritative.  The reported events occurred more than 35 years prior to Appellee purchasing the property in 2010 and are of no consequence to this appeal.

[2] Appellants aver that Mr. Hayes, Ms.  Fogle and her three children were on the lease at time of conversion from project based to tenant based voucher in 2008, and aver that as such these individuals have the unfettered right to remain in the premises until they choose to leave. However, Appellee was not privy to the lease agreement in 2008 since he purchased the property in 2010; and Appellants submitted no evidence that any of the five members of the Hayes/Fogle family were on the lease at time of conversion in 2008.

Hayes, entered into a one year lease for the premises commencing on May 11, 2010. The lease automatically renewed for one year terms thereafter and the final lease term ended on April 30, 2015. (J.A. 650 - 657 and J.A. 314). On the same date of the Lease Agreement, Defendant Harvey entered into a HAP Contract with the local housing authority, PHA. (J.A. 658). The HAP Contract provides:

> "This form of Housing Assistance Payment Contract (HAP contract) is used to provide Section 8 ***tenant-based assistance*** under the housing choice ***voucher program*** of the U.S. Department of Housing & Urban Development (HUD). *The main regulation for this program is 24 CFR§982.*

(J.A. 659, emphasis added).

Although Appellee admits that upon information garnered from this litigation only that the Hayes Family receives an Enhanced Voucher, at no time was Defendant Harvey privy to the events which led the Hayes Family's receipt of the Enhanced Voucher. Appellant Hayes admits that he never spoke to Appellee or his daughter about the Enhanced Voucher (J.A. 321, 515, 521). More importantly, Defendant Harvey never signed a HAP Contract for the Enhanced Voucher. To the contrary, the HAP Contract refers specifically to the Section 8 tenant based voucher program which is governed by 24 Code of Federal Regulations and the United States Housing Act of 1937, 42 U.S.C. §1437f(o) and not the Enhanced Voucher as regulated by the United States Housing Act of 1937, 42 U.S.C. §1437f(t). (J.A. 659).

4

On February 17, 2015 and May 1, 2015 Defendant Harvey served the Hayes Family with notices of non-renewal of the lease agreement which was set to expire on April 30, 2015.  (J.A. 676 and 677).

The proposed eviction of the Hayes Family is based on Pennsylvania law and the HAP Contract entered into between Defendant Harvey and the local housing authority (PHA) which permit the eviction of a tenant upon the termination of the lease.

## SUMMARY OF ARGUMENT

The court below correctly held that Appellants have neither established standing,nor pled a valid cause of action against Appellee Philip Harvey. Appellants have failed to state a cognizable claim, and have no standing to pursue it because there exists no provision of any statute which entitles Appellants to remain in the premises in perpetuity.

## ARGUMENT

**I.    THE DISTRICT COURT CORRECTLY HELD THAT APPELLANTS DO NOT HAVE THE RIGHT TO REMAIN IN THE PREMISES AS THE LEGISLATIVE HISTORY OF 42 U.S.C. §1437 f(t) CONCERNS ONLY HUD'S & OPT OUT LANDLORD'S OBLIGATIONS TO THE TENANT, NOT APPELLEE'S**

### A.    Statutory Background

The Housing Choice Voucher Program (HCV), formerly known as Section

8, is a federally funded program which is administered by the local housing authorities. The program provides subsidized rental assistance to very low-income and disabled families to afford housing in the private market. (J.A. 309, Housing Choice Voucher Fact Sheet).

HCV may be either "project-based" or "tenant based."  24 C.F.R. §982.1(b)(1).  Project based assistance is tied to the individual units where as tenant based assistance is associated with the tenant and moves along with the tenant when he or she moves to another HCV unit.  Under the tenant based voucher program HUD enters into a HAP contract with private owners for individual units after the tenant has selected their unit of choice.  Tenant based vouchers are portable meaning that the tenant may choose to live in any property where an owner agrees to enter into a HAP contract.  42 U.S.C. §1437f(o)(1)(B), 42 U.S.C. §1437f(o)(2)(A)-(B).

Under the voucher program, the contract entered into between the landlord-owner and the local housing authority:

> "shall provide ***that during the term[3] of the lease***, the owner shall not terminate the tenancy except for serious repeated violations of the terms and conditions of the lease, for violations of applicable Federal, State or local law, or for other good cause, and in the case of an owner who is an

---

[3] It is implicit that as in all landlord-tenant relationships, the lease terminates upon the termination of the term and that the landlord is entitled to evict pursuant to Pennsylvania and local laws.

immediate successor in interest pursuant to foreclosure during the term of the lease vacating the property prior to sale shall not constitute other good cause..."

42 U.S.C. 1437o(7)(C), emphasis added.

It is undisputed that Plaintiffs received a tenant based assistance voucher in the case at hand since the property, by Appellants' own admissions, was no longer project based when purchased by Harvey in 2010. Notwithstanding, Appellee provides the project based procedural history by way of background only.

In the 1960's, Congress sought to entice landowners to build affordable project based rental housing for low-income and disabled tenants by subsidizing and insuring mortgage loans for the construction of multifamily housing. See Housing & Urban Development Act of 1968, 82 Stat. 476, 498-503 (1968), Pub. L. No. 90-448, §§ 201 (a), 236 (a)-(g). Under this program, HUD entered into contracts with private homeowners to insure and subsidize the interest payments of the mortgages held by the owners. In the late 1980's many of these owners became eligible to prepay mortgages, thus terminated their contracts with HUD and opted out of the project based program 24 C.F.R. §221.524 (a)(ii)(197).

In order to protect tenants residing in assisted units when owners sought to "opt out", Congress enacted a notice requirement requiring the owner to provide the tenant and HUD with written notice "not less than one year before the

7

[proposed] termination."  42 U.S.C. §1437f(c)(8)(A).

As numerous project based contracts began to expire in the late 1990's, Congress authorized HUD to issue "enhanced vouchers."  See 113 Stat. 1047, 1113 (1999), Pub. L. No.: 106-74, §531(d)(1). Under the enhanced voucher program, *if an owner[4] opts out of the project based contract*, HUD is authorized to issue "enhanced" vouchers to tenants who are residing in the project at the date of the contract expiration.  42 U.S.C. §1437f(t).  The code provides:

> "1) In general: *Enhanced voucher assistance under this subsection for a family shall be a voucher assistance under subsection (o) of this section, except that under enhanced voucher assistance –*
>
> * * *
>
> (B) the assisted family *may elect to remain* in the same project in which the family was residing *on the date of the eligibility event for the project*, and if, during any period the family makes such an election and continues to so reside, the rent for the dwelling unit of the family in such project exceeds the applicable payment standard established pursuant to subsection (o) for this section for the unit, the amount of rental assistance provided on behalf of the family shall be determined using a payment for the unit..."

(42 U.S.C. §1437f(t), emphasis added)

On July 13, 2000, Congress amended subsection (t) to provide that the "assisted family *may elect to remain* in the same project" at the time of the

---

[4] By Plaintiffs' own admission, Defendant Harvey is not the owner who "opted out." Plaintiffs admit, although Defendant has no independent knowledge, that the premises was originally a project based unit and that the prior owner, Pine Street Associates, who received the federally subsidized mortgage opted out in 2008.

contract termination.  114 Stat. 569 (2000), Pub. L. No. 106-246 §2801, emphasis added. In conjunction with the amendment, HUD issued a publication that provided guidance to tenants regarding their rights to remain in their homes **when** landlords decide to exercise their opt-out prerogative.  The HUD Policy Guide provides that ***owners who have decided to opt-out of the project based Section 8 program*** to certify that they "will comply with the requirements to allow families receiving enhanced vouchers who elect to remain to do so as long as the property remains a rental property, unless the owner has just cause for eviction." (J.A. 249). The opt out owner is required to certify that they agree to honor the tenants' right to remain at the property. Id. at pg. 6. "If an owner refuses to honor the tenants right to remain, the tenant's remedy will depend on State and local law."  Id at pg. 3, Section 11-3 B 1.  (J.A. 249).

In the case at hand the undisputed facts remain that: 1) at no time did Defendant Harvey enter into a project based Section 8 assistance contract with HUD; 2) at no time did Defendant Harvey obtain a federally insured mortgage from HUD; and 3) the Hayes Family's prior landlord who had allegedly entered into a project based Section 8 Contract with HUD was the only landlord owner who was required to issue the one year opt out notice letter and certify that he/she would honor the tenant's right to remain at the time of conversion.

9

## B.    The Right to Remain Does Not Extend into Perpetuity

The District Court in the case at hand correctly found that the legislative history of 42 U.S.C. §1437 f(t) concerns only the obligations of HUD and the opt-out landlord to the tenant, not the non-opt out owner, such as Appellee.  Tenant-Appellants, however, argue that congressional history conclusively demonstrates that enhanced voucher tenants have a federally statutory right to remain in their homes indefinitely and that the eviction provisions of  42 U.S.C. §1437 f(o) do not apply to enhanced voucher tenants.  Obvious flaws to Appellant's bootstrapping argument include: a).  Why would HUD require the opt out notice letter if a tenant could remain in the unit in perpetuity?; and b).  Why would HUD permit a project based landlord to opt out if the unit is to remain a Section 8 property into infinity?

In addressing these issuing and making a ruling consistent with the law and congressional intent, the District Court correctly held that Appellants' right to remain upon the occurrence of the eligibility event does not insulate them from eviction.  There simply is no evidence and/or law relied upon by Plaintiffs, as none exists, to support Plaintiffs allegation that a new owner of the premises who NEVER utilized ANY federal funds to purchase the property is bound by the Enhanced Voucher regulations.  By Plaintiffs own admission the "*United States Housing Act protects low-income tenants whose property owners chose to prepay*

10

*or opt out.*" (J.A. 66) (emphasis added).

Of great significance is that no where in the contract entered into between

Defendant Harvey and the local housing authority does it mention that the Hayes

Family has a right to remain in the unit.  To the contrary, the contract specifically

provides that the term of "the HAP contract begins on the

first day of the initial term of the lease, ***and terminates on the last day of the term***

***of the lease*** (including the initial lease term and any extensions)." (J.A. 660, Part

B, Section 4a).

Moreover, the HAP Contract specifically contemplates an eviction ***during***

***the term*** of the lease:

> **Termination of Tenancy by Owner**: a. Requirements: The owner
> may only ***terminate the tenancy*** in accordance with the lease and
> HUD requirements. b. Grounds. ***During the term of the lease (the***
> ***initial term of the lease or any extension term)***, the owner may only
> terminate the tenancy because of:
>
> (1) Serious or repeated violations of the lease;
> (2) Violation of Federal, State or local law that imposes
> obligations on the tenant in connection with the occupancy or
> use of the unit and the premises;
> (3) Criminal activity or alcohol abuse;
> (4) Other good cause (as provided in paragraph d).

(J.A. 666, Part C, Section 8a-b).

Per the Lease Agreement, the initial term of the lease began on May 11,

2010 and ended on April 30, 2011 with automatic annual renewals until notice of

11

termination is provided by either the landlord or tenant. (J.A. 650). In both

February and May, 2015 Defendant Harvey sent notices to the Hayes Family of his

intention to not renew the lease which was set to expire on April 30, 2015. (J.A.

676 & 677). Pursuant to Pennsylvania and local laws, the termination of the term

of the lease is a valid legal basis for evicting a tenant. See, Landlord Tenant Act

of 1951. Moreover, the binding contract entered into between the Hayes Family,

Defendant Harvey and PHA authorizes the termination of the lease upon the

termination of the term.

Although the Lease Agreement (J.A. 650) and HAP Contract (J.A. 658)

provide a section for termination of the tenancy by the owner during the term of

the lease, such sections are not applicable given that the term of the lease had

expired on April 30, 2015. Plaintiffs are violating the lease agreement and

Pennsylvania Law by continuing to reside in the unit despite receiving the

requisite notice to vacate the unit.

Appellants purport to claim that "multiple recent federal courts

have...granted preliminary and permanent injunctions protecting Enhanced

Voucher assisted families' Right to Remain." (Appellant brief, pg 29). However

all the cases cited by Plaintiffs are factually distinguishable from the case at hand,

yet ultimately concur with the district court's ruling in the case at hand.

In all the cases cited by Plaintiffs, *Park Village Apts. et al. v. Mortimer Howard Trust*, 2007 U.S. Dist. LEXIS 14516, *Feemster v. BSA Ltd*, 548 F. 3d 1063 (D.C. Cir. 2008), *aff'g in relevant part*, 471 F. Supp, 2d 87 (D.D.C. 2007); *Barrientos v. 1801-1825 Morton, LLC*, No.: 06-6437, 2007 WL 7213974 (C.D. Cal. Sept. 11, 2007, *aff'd on other grounds*, 583 F.3d 1197 (9th Cir. 2009; *Estevez v. Cosmopolitan Assoc., LLC*, No.: 05-4318, 2005 WL 3164146 (E.D.N.Y Nov. 28, 2005): *Jeanty v. Shore Terrace Realty Ass'n*, No. 03-8669, 2004 WL 1794496 (S.D.N.Y. Aug. 10, 2004), the landlord-defendants had all received federal mortgages through the *project based* Section 8 Program and all had opted out of the program with some landlords either failing to provide the one year "opt out letter" or failing to accept the enhanced rent from HUD at the time of opt out.

Notwithstanding the factual distinguishes, the Courts *supra* nonetheless agree that the right to remain does not extend into perpetuity. In *Jeanty*, a District Court decision from the Southern District of N.Y., the court allowed for the possibility that an eviction could still occur for an enhanced voucher tenant. The court held, "[g]iving the words used in 42 U.S.C. §1437f(t)(1) and (2) their ordinary meaning, it is clear that the statute provides families renting at the time of the termination of the project based subsidy contract the right to remain in their units, using enhanced vouchers, for so long as the tenant remains eligible for the

voucher *or until the tenant is evicted*." Id at 3." (emphasis added).

Similarly, in *Barrientos*, the 9th Circuit held that"

"Congress repealed the 'endless lease' provision by eliminating the "good cause" requirement for non-renewals, though it retained the requirement for termination of a tenancy during the term of lease." citing Pub. L. No. 104-134, §203 (c)(2), 110 Stat. 1321, 1321-281 (1996). In 1998, Congress made the 1996 changes permanent. Pub. L. No. 105-276, §§545, 549(a), 112 Stat. 2461, 2561, 2596-604, 2607-09 (1998). The current governing statute provides that '*during the term* of the lease, the owner shall not terminate the tenancy except for serious or repeated violations of the terms and conditions of the lease, for violation of applicable Federal, State or local law, or for other good cause." 42 U.S.C. §1437 f(o)(7)(C). In 1999, HUD issued final implementing regulations, leaving its definition of 'good cause' unchanged. 64 Fed. Reg. 56,894 (Oct. 21, 1999).

Id at. 14433 (emphasis added).

The 9th Circuit affirmed that the "good cause" provision applies "during the term of the assisted lease," but not after the termination of the assisted lease. Id.

The District Court in *Barrientos* concluded that:

"In short, even though enhanced voucher tenants have a right to remain in tenancy [at the time of conversion], Congress never intended to tie the hands of owners such that they are saddled with enhanced voucher tenants who cannot be evicted for statutory cause. Even HUD interprets subsection (t) to be subject to the eviction grounds in subsection (o)(7).

(See Memorandum Opinion, *Barrientos v. 1801-1825 Morton Inc.*, 06-CV-6437

ABC (Central District of California Western Division, September 12, 2007).

See also *Estevez v. Cosmopolitan Assoc,* wherein the court held that "...the

specific enactment that enables an identified group of Section 8 recipients to

14

remain in their homes governs the general Congressional intent of allowing

landlords to opt out of a lease." Id.

Moreover, the First Circuit Court of Appeals held that "there is no statutory

authorization which would require the Owners to continue participating in HAP

contracts once they expired. See, *In People to End Homelessness, Inc. v. Develco*

*Singles Apartment Associates*, 339 F. 3d 1 (1st Cir. 2003) in which the project

based HAP contract was set to expire and the owner sent a non-renewal notice to

each tenant. HUD then issued the tenants who chose to remain enhanced

vouchers. Plaintiffs filed suit in the District Court seeking to enjoin defendant

from evicting them stating failure of the opt out letter to comply with the law. The

court granted the restraining order prohibiting the owners from evicting the

tenants for one year or until they received the appropriate notice letter. However,

it also granted defendant-owner's motion for summary judgment finding that 42

U.S.C. §1437 f(t) only obligated HUD to provide a voucher and that the landlord

was estopped from evicting only during the one year notice period.

The First Circuit found that §1437 f(t) concerned only HUD's obligation to

not force "enhanced voucher tenants" to leave their residence upon the expiration

of the project based contract. Id at. 4. Per the statute, the tenants "may elect to

remain," and if they do make such election, HUD must issue them an enhanced

voucher so as to permit the tenant to pay the higher rent that may now be charged by the landlord-owner.

The Court further explained that once owners remained in the Section 8 program for an additional year, giving the tenants ample opportunity to seek alternative affordable housing through the voucher program, the plaintiff no longer had issues that could be redressed by suit and ***lacked standing to pursue its claims***.

Under the 2000 amendment to ¶1437 f(t), Congress clarified that HUD may not avoid its obligation to issue an enhanced voucher by insisting that the tenant leave his or her unit when an "eligibility event" such as the expiration of the project-based contract occurs. 114 Stat. 569 (2000), Pub. L. No. 106-246 §2801. The Section 8 Renewal Policy further clarifies that the assisted families have "the right to remain in their units as long as the units are offered for rental housing when issued an enhanced voucher.." (J.A. 249). Clearly the purpose of the "may elect to remain" language regards HUD's obligation to issue the enhanced voucher and pay the higher rent if the tenant chooses to remain, not that the family has the right to remain indefinitely.

Appellants' argument that the "District Court's analysis conflate[s] three federal subsidies" (Appellant Brief at pg. 38) is without basis. To the contrary, the

clear language of 42 U.S.C. §1437 f(t) explicitly states that enhanced vouchers have special requirements, however, in all other aspects are subject to the same rules of the tenant based voucher program found at 42 U.S.C. §1437 f(o). The language of the statute explicitly provides that the distinction of an enhanced voucher is that it allows households to remain in their homes at the time of conversion from a project based unit even if the rent is greater than the payment standard allowed by a regular voucher. However, the statute provides that in all other respects, "enhanced voucher assistance...shall be a voucher assistance under subsection (o) of this section." 42 U.S. Code §1437 f(t). Section 1437 f(o)(7)(C) explicitly provides that the owner shall not terminate the tenancy during the term of the lease except for violations and/or other good cause. Nothing in the statute or Congressional history provides that the lease cannot be terminated at the end of the lease term.

As noted supra, Defendant Harvey never purchased a project based property and certainly never received any federal mortgage to purchase the home at market rate for $1,215,000. There is no case law cited by Appellants, and none exists, to support their proposition that an owner such as Appellee Harvey who purchased the property with no deed restrictions, no federal insurance, no federal mortgage, and no project based Section 8 Contract is required to permit the Hayes Family to

reside in the unit in perpetuity. Moreover, any reason to terminate, including "good cause" is not required at the case at hand given that the tenancy automatically expired at the end of the term and as such Pennsylvania and local laws permit the eviction.

### C.   Appellants' Application of the Right to Remain is a Violation of the Fifth and Tenth Amendment of the Constitution

Appellants' claim that even though no federal subsidy contract ever existed between Defendant and HUD and that Defendant Harvey never reaped the benefits of any subsidized mortgage, 42 U.S.C. §1437 f(t) grants them the right to remain in their rental unit in perpetuity. Such an interpretation essentially transfers the property rights of a landlord to the tenant without just compensation and in violation of the Fifth and Tenth Amendments of the U.S. Constitution.

### 1.   Violation of Fifth Amendment

The Fifth Amendment limits the federal government's power of eminent domain: "nor shall private property be taken for public use without just compensation." U.S. Const., amend. V. The Hayes Family's interpretation of the law results in a regulatory taking of personal property in violation of the 5th Amendment of the U.S. Constitution which provides that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V. The

"use of a restriction on real property may constitute a taking if not reasonably necessary to the effectuation of a substantial public purpose [citations omitted], or perhaps if it has an unduly harsh impact upon the owner's use of the property." *Penn Central Transp. Co. v. N.Y. City*, 438 U.S. 104, 127 (1978).

The "right to remain" restricts the use of private real property especially in the case at hand when Defendant Harvey never entered into a project based contract agreeing to restrict his property. Moreover, the taking resulting from the right to remain does not effectuate a substantial public benefit. Instead it unduly and harshly impacts the Defendant's use of the property. It cannot be said that a taking for the benefit of an enhanced voucher holders is a public benefit especially where the statute specifically identifies the limited private individuals who are being granted the alleged "right to remain."

### 2.    Violation of Tenth Amendment

The Tenth Amendment provides, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectfully, or to the people." U.S. Const., amend. X.  Under the 10th Amendment, the Court must determine whether an act of state sovereignty is protected by a limitation on an Article I power. *N.Y. v. U.S.*, 505 U.S. 144, 157 (1992).

19

It has long been the law that the "disposition of immovable property, whether by deed, descent, or any other mode, is exclusively subject to the government in whose jurisdiction the property is situated." *U.S. v. Fox*, 94 U.S. 315, 320 (1877). Plaintiffs claim that they are entitled to remain essentially grants them a property interest in the Defendant's privately owned property in violation of the Tenth Amendment.

## CONCLUSION

For the foregoing reasons, the district court's opinion granting the defendant's Motion to Dismiss, denying Plaintiffs' Motion for Summary Judgment and dismissing Plaintiff's Complaint should be affirmed.

Respectfully submitted,

KOLBER & RANDAZZO, P.C.

BY:  s/Susanna Randazzo
     Susanna Randazzo, Esquire
     I.D. No. 79116
     1 South Broad Street
     Suite 1610
     Philadelphia, PA 19107
     P - (215) 567-1333
     F - (215) 567-2099

Dated: October 28, 2016

## CERTIFICATION OF WORD COUNT

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,700 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

KOLBER & RANDAZZO, P.C.

BY:    /s/Susanna Randazzo
        Susanna Randazzo, Esquire
        I.D. No. 79116
        1 South Broad Street, Suite 1610
        Philadelphia, PA 19107
        P - (215) 567-1333
        F - (215) 567-2099

Dated: October 28, 2016

# CERTIFICATION OF IDENTICAL COMPLIANCE OF BRIEFS

I certify that the E-Brief and Hard Copies of the brief are identical.


KOLBER & RANDAZZO, P.C.


BY:    /s/Susanna Randazzo
       Susanna Randazzo, Esquire
       I.D. No. 79116
       1 South Broad Street, Suite 1610
       Philadelphia, PA 19107
       P - (215) 567-1333
       F - (215) 567-2099

Dated: October 28, 2016

## CERTIFICATION OF VIRUS CHECK

I hereby certify that a virus check was performed on the E-Brief using

McAfee VirusScan Enterprise 8.0.0 and that no viruses were found.

KOLBER & RANDAZZO, P.C.


BY:    /s/Susanna Randazzo
       Susanna Randazzo, Esquire
       I.D. No. 79116
       1 South Broad Street, Suite 1610
       Philadelphia, PA 19107
       P - (215) 567-1333
       F - (215) 567-2099

Dated: October 28, 2016

## CERTIFICATION OF BAR MEMBERSHIP

The undersigned hereby certifies pursuant to Third Circuit Local Appellate

Rule 46.1(e) that the attorney whose name appears on the foregoing brief, Susanna

Randazzo, is a member of the bar of this Court.

KOLBER & RANDAZZO, P.C.

BY:   /s/Susanna Randazzo
Susanna Randazzo, Esquire
I.D. No. 79116
1 South Broad Street, Suite 1610
Philadelphia, PA 19107
P - (215) 567-1333
F - (215) 567-2099

Dated: October 28, 2016

## CERTIFICATE OF SERVICE UPON COUNSEL

I hereby certify that on October 28, 2016, I electronically filed the foregoing using the Court's CM/ECF system, which sent a notification of such filing to the following:

> Rachel Garland, Esquire
> George Gould, Esquire
> Michael Donahue, Esquire
> Community Legal Services
> 1424 Chestnut Street
> Philadelphia, PA 19102

Also on this day, 7 copies of the foregoing were hand delivered to the Office of the Clerk of Court and one copy hand delivered to counsel listed above.

KOLBER & RANDAZZO, P.C.

BY:  /s/Susanna Randazzo
Susanna Randazzo, Esquire
I.D. No. 79116
1 South Broad Street, Suite 1610
Philadelphia, PA 19107
P - (215) 567-1333
F - (215) 567-2099

Dated: October 28, 2016